Cite as 2025 Ark. App. 310

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-24-217

| | | |
|---|---|---|
| | | Opinion Delivered May 14, 2025 |
| ALEXAKIS CONNER | | |
| | APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26DR-20-1027] |
| V. | | |
| | | HONORABLE LYNN WILLIAMS, JUDGE |
| DARRIAN CONNER | | |
| | APPELLEE | |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

Alexakis and Darrian Conner were married on July 20, 2015, separated December 4, 2020, and divorced by decree of the Garland County Circuit Court on February 8, 2024. The parties have five children together, ages ranging from five to ten at the time of the divorce. Custody of the children was placed with their father, Darrian, subject to Alexakis's visitation. On appeal, Alexakis argues that the circuit court erred in granting Darrian custody of the children in light of the evidence presented to it that Darrian is violent, has a drinking problem, interferes with her ability to see the children, and is dishonest. We affirm.

Alexakis filed her complaint for divorce on December 16, 2020. This was followed six days later by an ex parte petition for custody and emergency use of the marital home. In that petition, Alexakis alleged that Darrian is emotionally and physically abusive toward the children, Darrian has a drinking problem, and she has concerns about his ability to care for

the children. The ex parte petition was granted, and a hearing was held on the motion the following February.

At the February 4 hearing, the court heard testimony from Alexakis that Darrian has a drinking problem and has been "physical" toward her. She introduced a two-year-old photo of a bruise he allegedly left on her arm from grabbing her. She also introduced photos of alcohol bottles and a trash bag of beer cans from Darrian's house. She said he is not violent toward the children. Before she filed the emergency petition, Alexakis had moved to Jacksonville. Darrian alleged that she had been stealing from their company, and she had to move away from Hot Springs to avoid people asking her about what happened. Darrian had lived with and taken care of the children since Alexakis moved out, December 4, until the court granted the emergency motion. She said that during that time, she did not go by the house or check on the kids because of the pending fraud charges.

Darrian testified that he had never been abusive toward Alexakis or the children, he does not have a drinking problem, the photos depict empty bottles and cans that had accumulated from having family and friends over for barbeques or visits, and he might have two or three beers occasionally in the evening after the kids go to bed. He stated that Alexakis moved out of the home around Thanksgiving, but she chose to leave due to the no-contact order between Alexakis and their taxi business. He clarified that it was the taxi business and Regions Bank pursuing the charges against Alexakis, not him. Once she moved out, she never called to check on the kids; he had been the sole caretaker of the five children while she was gone.

The court also heard testimony from Darrian's oldest daughter and Alexakis's stepdaughter, who was fourteen at the time. She testified that she's never gone without food or shelter, and she has never seen her dad be violent toward her, her siblings, or her stepmother.

At the conclusion of the hearing. the court noted that it was interested in keeping the sibling group together and decided that returning everyone to the "status quo" that existed before the motion was filed was the best course of action. Darrian was awarded use of the marital home and custody of the children. Alexakis was granted visitation every other weekend. Both parties were ordered not to drink alcohol when the children were present.

A final divorce hearing was held on June 5, and August 8, 2023.

At the hearing, Alexakis testified that in July 2022, she moved to Tulsa, Oklahoma, where she currently lives with her boyfriend. She testified that during the marriage, Darrian was frequently drunk and violent toward her. She introduced some photos of bruises from 2020. She introduced some screenshots—taken while she FaceTimed the children—of the home looking dirty in the background. She testified that when she gets the kids, they are dirty. She testified that since being in their father's care they are falling behind in school. She said there were people living in the home with Darrian and the children.

On cross-examination, Alexakis explained that Darrian would not facilitate her communication with the children, but she could reach them through the communication feature on the PlayStation. She had not exercised her visitation with her children since September 2022 because Darrian would not meet her in Fort Smith.

Darrian testified that he and the children had lived in the same house in Hot Springs since 2014. He worked security at Magic Springs theme park. All the children attend school in the Hot Springs School District. He takes them to school, helps them with their homework, and takes them to doctor and dentist appointments. The kids do great in school. They have friends and extracurricular activities. He has family in the area who help him with the children, and they have a great relationship with his mother. He testified he does not have a drinking problem, the photos of the beer cans and alcohol bottles predated the temporary order, and he might have a beer "when the kids are gone, you know."

Since moving to Oklahoma, Alexakis had not come to visit her children. She had not sent any financial support to help with their care. She had not helped purchase any school supplies or clothes. She had not sent birthday gifts or holiday cards. She had not come to get them or see them for any holidays, including Christmas. Darrian testified that he had not blocked her ability to visit or contact any of the children. In response to questions about how often he communicates with Alexakis, he replied, "I have nothing to say to her." When asked why he did not just give Alexakis a date that she could have visitation, Darrian responded, "Her dates is every weekend."

At the conclusion of the hearing, the court instructed counsel to prepare competing findings of facts and conclusions of law and submit them to the court. The court adopted Darrian's proposed findings, and a divorce decree was entered February 8, 2024. The findings were extensive, but concerning custody and Alexakis's arguments on appeal, the court found that it was Alexakis's decision to move to Oklahoma, she had not exercised her

visitation rights, and she had provided very little in the form of support for the children over the last two years. The court further found that Darrian had been raising the five children by himself and had done nothing to interfere with Alexakis's ability to come to Arkansas to visit or have any type of relationship with the children. The court found that the children have friends, do well in school, have relationships with their extended family, and are involved in activities.

The court found that this evidence supports the finding that Darrian had rebutted the presumption in favor of joint custody. Alexakis was granted visitation every other weekend and certain holidays. The decree provided for scheduled telephone visitation every evening at 6:00 p.m. and that the parties would exchange custody at the sheriff's office in Garland County. Child support was ordered.

From this decree, Alexakis appeals. On appeal, she argues that the circuit court failed to properly consider and weigh the evidence she presented that Darrian is violent, has a drinking problem, is uncooperative, and is dishonest.

Again, the circuit court found that Darrian had rebutted the presumption that joint custody is favored. Alexakis does not argue that the circuit court should have awarded joint custody; instead, she argues that the circuit court erred in awarding primary custody to Darrian instead of her.

We perform a de novo review of child-custody matters, but we will not reverse the circuit court's findings unless they are clearly erroneous. *Hamerlinck v. Hamerlinck*, 2022 Ark. App. 89, 641 S.W.3d 659. We recognize and give special deference to the superior position

of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Id.*

Arkansas Code Annotated section 9-13-101(a)(1)(A)(iii) (Supp. 2023) provides that joint custody is favored in Arkansas.

In an action concerning an original custody determination, there is a rebuttable presumption that joint custody is in the child's best interest, but this presumption may be rebutted if the court finds by clear and convincing evidence that joint custody is not in the child's best interest. Ark. Code Ann. § 9-13-101(a)(1)(A)(iv)*(a)* & *(b)(1)*. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Zihala v. Staley*, 2024 Ark. App. 269, 689 S.W.3d 82.

While there is a statutory preference for joint custody, this preference does not override the ultimate guiding principle, which is to set custody that comports with the best interest of the child. *Hanson v. Hanson*, 2023 Ark. App. 363, 676 S.W.3d 8. Here, the court's best-interest finding is supported by the fact that during the pendency of this action, Alexakis moved to Tulsa and quit exercising her right to visitation with the children. She essentially left Darrian to raise five children on his own.

Alexakis first argues that the evidence she presented that Darrian had battered her in the presence of the children was "unrebutted." However, Darrian testified that he never put a bruise or a mark on Alexakis. At the temporary hearing, Alexakis's stepdaughter testified she had never been abused or witnessed abuse.

6

Alexakis next argues that Darrian was never sober, and she directs our attention to the photos she introduced of beer cans and alcohol bottles. These were the same photos introduced at the temporary hearing. At the divorce hearing, Darrian testified that he would not drink unless the children were gone, which is consistent with the circuit court's order at the temporary hearing that the parties not drink when the children were present.

Alexakis alleges that Darrian obstructed her efforts to communicate with, visit, and support her children. She claims he did not answer her calls and rarely responded to her texts. However, testimony and text-message screenshots show that Alexakis expected Darrian to meet her in Fort Smith or "just meet him halfway" with the children, offering to pay for his gas. The temporary order was issued before Alexakis relocated to Tulsa and did not specify a meeting location. However, it was Alexakis's decision to move to Tulsa, and it was not unreasonable for Darrian to be unwilling to make a six-hour round trip every other weekend—absent a court order—due to Alexakis's relocation.

Some of the evidence also appeared to show that Alexakis was seeking some "summer" visitation, but the temporary order did not contemplate extended visitation. She was awarded every other weekend, and she did not make the effort to go see her children. She explains that she could not just show up at the house. She argues that there was a "no contact order" that precluded her from getting her children. However, all mentions of the no-contact order on this record were from the temporary hearing and pertained to the fraud charges, which had been dropped. Moreover, when Alexakis was asked at the divorce hearing to elaborate about this "order" that prevented her from picking up her children, she clarified

that it was not actually a court order, "[i]t was more of an aggressor meaning any time that me and Mr. Conner had any kind of contact, it was very aggressive."

Regarding communication, Darrian testified that he has not interfered or blocked Alexakis's ability to have visits or contact the kids, and she can call his phone, "but she failed to call." He also testified that the kids are allowed to use his phone to call her anytime.

Alexakis's last point is that Darrian was dishonest with the circuit court. She does not point to any testimony in particular and incorrectly states that "[t]he trial court's temporary order specifically forbade Darrian from drinking or having alcohol in the home in visitation." That order actually provided that "no party shall consume or possess alcohol in the home when the minor children are present." She makes no real argument regarding this subpoint other than to imply that Darrian lacked candor concerning his alcohol consumption.

In sum, for every allegation Alexakis makes on appeal concerning why Darrian should not have custody, there is evidence in this record to the contrary. Given this, it is clear that Alexakis's appeal is one asking us to reweigh the evidence and evaluate it differently than the circuit court. This is something we will not do. *Hamerlinck*, 2022 Ark. App. 89, at 15, 641 S.W.3d at 667. Each child-custody determination ultimately must rest on its own facts. *Id.* Here, the court had ample evidence before it to support the award of custody in Darrian's favor: the children were doing well in school, had good relationships with friends and family in the area, and were involved in extracurricular activities. On the other hand, Alexakis moved out of state and never saw them in person again. The court asked for competing findings of fact and conclusions of law and had the opportunity to consider both. Had the

8

court ruled in Alexakis's favor, that decision could arguably have also been in the children's best interest. The facts and arguments presented in this appeal are a classic example of why this court defers to the superior position of the circuit court to evaluate the witnesses, their testimony, and the children's best interest.

Affirmed.

KLAPPENBACH, C.J., and ABRAMSON, J., agree.

*Robert S. Tschiemer*, for appellant.

One brief only.